v. Hoare, attorney general, and I do want to thank the defendant, Mr. T.P.R. Rutherford, and I do want to thank the plaintiff's attorney, Mr. David A. Buckner. Thank you. Mr. Rutherford. Yes, sir. May it please the court. Your Honors, this is a case on post-conviction, first stage review by the lower court. The error in the case is the judge found that the record allegedly contradicted the claims made by the defendant, Mr. Hoare. Mr. Hoare's claim here was that trial counsel misinformed him of the clear and certain consequences, immigration consequences, of his plea. He put that in an affidavit attached to his post-conviction petition. Trial counsel put in his affidavit attached to the petition that, yes, I did not inform the defendant that he would be deported as a result of his plea to a 410 probation case. Is this a matter of degrees, automatically, likely? It is a degree, one which gets you banished from the country and one that may give you a fighting chance to stay in the country. So although I think from the record's perspective, when you look at it, the difference between will and could may not seem that far, but I think for the actual consequences for the individual, it's a pretty stark and drastic consequence. And for the same reasons, I think the situation where Judge Shaines looked at the record and he said, well, look, we asked if an immigration lawyer had been consulted and the trial counsel said, yes, they had. They think that this was the best disposition based on that advice. Trial counsel in his affidavit said nothing about advising an immigration attorney. The defendant agreed at the time during the plea saying, yes, Your Honor, when asked whether that was true or not. But he explains in his affidavit why he did that. He said basically that he relied on Mr. Trial counsel's representations at that point to the judge. The first time he had ever heard it, that there had actually been some kind of consultation with an immigration attorney. The defendant said he told Mr. Trial counsel from the beginning that this was an issue, that he wanted this issue to be dealt with and handled correctly, and he is entitled to rely on his counsel's advice concerning that matter, and that's what he did in this case. It turns out to be the absolute wrong advice. Where the error comes in is, of course, this was first stage, and the record that exists does not contradict the claims made in the petition. The reason that it doesn't contradict it is for the reason Justice Jorgenson just noted. It is a question of degree, but it is one of significance. It's not a small issue here. The difference between an automatic deportation and having a fighting chance can mean everything to a defendant. And in this case, the defendant, of course, is married and he has children and has made his life here over an extended period of time. So that difference certainly matters. But that goes to prejudice, not to whether or not there was error. Well, the way that Judge Saines handled the decision, he made it, he basically said that that also went to the error. The prejudice side of it, I agree with Your Honor, it's more of the prejudice issue. Whether or not the prejudice is clear, whether he alleged prejudice, and that was contradicted by the record. Again, there was nothing in the record that contradicted his prejudice claim. In fact, they knew from the very beginning that there was a deportation issue here that needed to be dealt with. Although there was a reference in the May transcript, May of 2013, I believe, if I don't misstate the year, saying that they were continuing the case for the purposes of trying to figure out what it was, whether or not there was going to be an immigration consequence to this. Since 2003, a 410 probation plea is a deportable offense automatically. There is no way around it. And so has the state taken a position relative to if this is vacated, be it a plea to a lesser offense that will not result in disqualification and deportation? Because it's first stage, we were never able to get that far. That is, obviously I have conversations with the state, but those are not of record because we're just waiting for the judge to make his decision. I can say as a matter of experience, and I've handled dozens and dozens of these post-conviction petitions, and I've never had one not get resolved in a way that the defendant does not get deported. That's not to say there couldn't be one. And that's not to say that the state made a representation here because they didn't. We never got that far. But it does go to the prejudice issue about what can be done in these kind of situations. Prejudice here relates to the fact that the defendant has a Sixth Amendment right to have his trial. Even if his trial is one where he's going to lose, he at least has the right to have it and take every last fighting chance he can to stay. The court here, the lower court, applied the wrong prejudice standard. In fact, the Supreme Court during the pendency of this case came down and clarified that that is in fact the right standard. The right standard is the only prejudice you have to assert is that you had an immigration-related issue and you would not have given up that trial right had you known you wouldn't get deported as a result. That's the Lee case that's cited in the petition. It's exactly the same facts as here. We have a defendant who from the very beginning of the case, before the plea even happened, trial counsel makes the representation that they need to investigate the immigration problem. So we know from Lee, just like in Lee, that that matters to him. And first-stage dismissal is not the place to resolve those issues because he's made the claim adequately in the petition. He makes the claim as both to the error and the prejudice. The problem I think here is that the lower court went into the record and made some determinations about what those facts meant without having and did tantamount to a mini evidentiary hearing without the hearing and made some determinations as to what those facts meant about both the error and the prejudice. And because those are not allowed at first stage, this court should reverse it. Let me ask you this, though. Given here that we all kind of agree would, could, should, is there terms used interchangeably? A trial judge may take 10, 15 pleas in a morning, says could when he shoulda, shoulda, shoulda, said would. Anyway, my point is this. What is an adequate inquiry for a trial judge to make of the defendant in order to establish a record that would meet the criteria now of U.S. v. Lee? So my position, Justice, is that 113.8 does not meet the standard now that Lee requires. That is, 13-8 is the statutory standard because it is specifically couched in the words would or could, not that it will cause a certain result. So that's a conflict there between Illinois state law and what Lee is going to require. And I think that the adequacy of the admonishment is really not the issue, although I can understand from a judicial economy perspective why that's important because, of course, you have varying degrees of defense counsel competence when it comes to dealing with these issues. But that's why an effective assistance counsel is really on the defense counsel to give the adequate warnings. And in this case, you didn't do that. It's on my shoulders to make sure this plea is free and voluntary. How do I do that if, and I don't mean this to diminish your case, but if it's a matter of, you know, I said could when I should have said would, what is it that makes the plea free and voluntary then, without also putting the trial judge in a position of giving legal advice? Well, sir, you do know that 14-10 is a commission, which means blah, blah, blah, blah, blah. Now I'm your attorney. So how do we resolve that? I will give you a chance to answer as much as you want. So what's the framework here then? Under the statute, you're supposed to, as a judge, give exactly word-for-word the admonishments. So if you give those word-for-word admonishments, you've given all the warning that you need to give. Under the facts of our case, however, that warning is inadequate, and then defense counsel has to fill in where the inadequacy or the inadequacy exists. That's why the Sixth Amendment is still relevant, and the advice given by trial counsel is still relevant, even when the admonishment is given correctly. I would submit in reading the transcript, I think Judge Shaines had some idea that 4-10 probation was a problem, which is why he made the extra inquiry about did you talk to an immigration judge, because I think trial judges are getting up to speed on the fact that 4-10s get people deported because those cases keep coming back to them. It's not a, this is not a key role of cocaine. This isn't a big drug case. But he says, did you talk to an immigration attorney? Is he also supposed to say, and what did the attorney tell you? And then make a decision, well, was that enough or not enough? Right. All I'm saying is what have we created here in terms of an ability to make a plea that will, for lack of a better word, will stick? I think that the 113A admonishment is the one that needs to be given word-for-word, and then as with every other admonishment that's given, there are no other than further and additional clarifications for a jury trial, et cetera, all the other admonitions that are given. The standard then is did the lawyer do the adequate job under the Sixth Amendment to advise his client as to what those mean under the facts of the case? How does the trial judge know that though? The trial judge doesn't know it any more than he or she does in relation to any of the other admonishments. So if it's an admonishment about do you understand your right to call a witness and bring that witness in and have them cross-examine, if the big part of the case is the availability of a particular witness, maybe like your last case, then the lawyer is charged with making sure that the client understands fully what the risks are in relation to that particular witness. There's no difference than with immigration law. Padilla makes it clear. You are required when it's clear consequences, you are required as a defense attorney, whether you're an immigration lawyer or not. It doesn't put that burden on the trial judge. It puts that burden on the defense attorney. Well, it requires an adjudication, does it not, on the merits as to what the consequences are in the future? Isn't that somewhat speculative? It isn't in this case. It can be. And I know that Valdez's case is one of the cases cited. A burglary, for instance, is a more – there are chances in certain offenses. What if the judge said something to the effect that you have had conversations with your own private trial counsel and with immigration lawyers, do you understand that they may be wrong, and if they were wrong, would you still wish to go to trial? And if he said no, then how does that? It may get you closer, I think, depends on – but the problem always is going to be is the trial judge is never going to be in a position to know what the conversations between defense counsel and the defendant were, which is the way it's supposed to be. I don't know that you were listening carefully because I gave you a hypothetical that suggested that the defendant was actually answering the question which he has to allege or did allege in this case, which is in my hypothetical he was saying no, even if I was given wrong information, I would still not want to go to trial. So now you have something on the record that would at least tend to impeach the defendant, if in fact he were to be placed in jeopardy. And then he came in and claimed that had I known it, I would have asked for a trial. Correct. So if a hypothetical puts the person in the position of being able to lie and say yes, I would seek a trial or tell the truth and say either one, it wouldn't make too much difference. Maybe this is frustrated at least to the extent that trial counsel may tell them to say something that would keep this open. But at least there is a record that will for whatever reason at least give a judge some prior or some knowledge of prior thought in the event that the need arises to reconsider it. And I think that, for instance, in federal court there will be an admonishment made during a plea process where they'll talk about what advice has counsel given you about the case and are you satisfied with that advice. Isn't that an invasion of the attorney-client privilege? Well, they don't go into the specifics. That admonishment that I laid out is pretty much the same one. And, of course, in federal court they make you make the statement under oath. And then the U.S. Attorney's Office will prosecute you if you come back and make a contradictory statement without cause or reason. But if you just make a flat out, I said it this way, but then later I said it some other way. So I think there is admonishments and a process that could cure that, but I'm not in the Illinois State Legislature and I'm not in a position to make those changes. It's Supreme Court rules. It's Supreme Court rules. It tells us how to conduct a plea. So, I mean, I sort of hear you saying, well, that's all well and good. Do whatever it is you do with the plea. But if you are not a U.S. citizen, there's always that get-out-of-jail card, which you can say, I didn't understand. You didn't tell me for sure, for sure, for sure, no matter what, I'm going to be deported. And anything less than that means I have to vacate this plea. The reason I don't think this is a floodgates type case is because 410 probations present something unique and a little bit different than your average drug case, for instance. That is, most lawyers in Illinois, even though I think things are slowly changing, feel like they're not convictions as long as you do everything you're supposed to do. Under Illinois law, they are not a conviction. Under immigration law, it is. Right, and so that 410, most lawyers go in, even still, and I've had this conversation many times with defense counsel in post-conviction situations, still have that idea that there is no other answer than, don't worry, it's not a conviction, when they talk to their client about that. So because that is unique relative to a 410 and maybe a subpoena, some other lower-level offenses, it won't apply to your more, you know, somebody's going to come in and say it was a murder case. Well, you know, I didn't understand that I could get deported over that. The statutes for immigration are completely different on those kinds of offenses. So this one does present a little bit of a unique problem, partially because of the way it juxtaposes with Illinois law, whereas I don't think you have those problems with most other offenses under Illinois law. Okay. We do have a conflict, at least in the area of void cards. There's case law out there that says that what may not be a conviction or an expungement will not alter the fact that some people have interpreted the federal statutes to suggest that, sorry, you lose, we're not going to recognize the fact that it's been expunged or that you were placed on supervision, especially relative to domestic violence. And it's true. So domestic violence has the same problem. It's treated more like a felony in immigration purposes. Very well.  Thank you. Mr. Bernhardt. Good morning, Mr. Chief. Good morning. Good morning. I would say that this defense attorney did about as much as one could do to protect this defendant. He did go to an immigration attorney. Well, he didn't, because he says one time he did, and then in his affidavit he says he didn't. Well, no, he said he didn't affirmatively say you're going to be deported. But the immigration attorney might have said that to the defendant. Now, to me, the record looks from when the judge was going through these admonitions, it looks like the defendant actually stated that, yes, my defense counsel went to an immigration attorney, and so did I. And I wonder what's glaringly absent from this petition is that there's no affidavit from the immigration attorney to say, oh, yes, we spoke, or I spoke to the defense counsel or defendant, and I didn't tell him that he would be deported under 410. That is omitted. Why is that omitted? They had plenty of time. An attorney did write the post-conviction. Granted, it's first, but that so there's something obviously missing here. Now, you go to an immigration attorney, and here we have a guy who gets this. If this went to a hearing, do you think the state might subpoena the attorney that supposedly consulted with the defendant and find out if this man or woman is competent or not competent? I would, yes, yes. But, you know, we have a situation here where he was picked up for driving with a suspended license. They take him to the police station. They take off his stocking cap, and cocaine falls out of his hat in front of police officers. If this isn't a bedbanging winner, I don't know what is. This immigration attorney could have said this. It wasn't his hat. It wasn't his hat, right? He was wearing it. Okay, that would be the defense, I guess. But he had really no option but to take the fact that, and this happens many times, that enforcement isn't always consistent in these immigration cases. You could say, I'll take the plea. I'm going to come out, and maybe I'm not going to get touched. How else, what other, how else is he going to take that position? He goes to trial. He's convicted. Gets one to three years. He's in prison for three years. Then he's getting deported. Which would you take? You know, the prison and deportation? Or maybe you might get deported. Maybe the enforcement. Maybe they won't find me. I mean, it's the same. So you're saying it's automatic deportation if somebody decides to track you down. Right. And it's not always. Is that another layer of admonition that we should be giving them? Okay, it's automatic, but you might get deported. You know, it's something that the trial attorneys always tell. And, you know, in the records I see all the trial attorneys say, yeah, well, you know, enforcement is iffy. That conversation is in the hall, never on the record. Right. But, well, I think I've seen affidavits in that particular case where he said, you know, the enforcement is iffy. We don't know for sure. But the fact is, what else was this defendant going to do? And, again, he never talked. There's nothing in the affidavits. Or the attorney were, hey, I'm really afraid of getting deported, like, you know, in the Lee case, Padilla. Those other cases, there's no focus on deportation. There's absolutely nothing in that record that states that I'm really worried about deportation. In these other cases, trial counsel goes, yeah, he asked me many times. There's nothing in the affidavit. And so there's no focus. And that's what in Padilla and in Lee, they said you have to focus. But they also say, you know, and where did I put that, that, you know, strickling is a high bar to meet. And you can't just believe the post-hack assertions of a defendant after he's been convicted and then, you know, picked up by immigration. There's just nothing on the record that shows affirmatively that he was even focused on deportation. What else can defense counsel do? I guess you could state you're going to go. For sure you're going to be deported. I mean, it's a very difficult situation for defense counsel. Again, the same thing for the trial judge. He gave the statutory admonitions, and then he went further. He asked, did you talk to immigration attorney? Asked both the defendant and defense counsel. And this is the plea you're taking. And counsel said, yeah, I vetted the decision with an immigration attorney. And this plea is the appropriate disposition taking that into account. And that's why I say, where's that immigration attorney's affidavit? What did he tell them? There's something being held back. And that rebuts, that record rebuts defendant's affidavit and defense counsel's affidavit. What do you think the attorney meant by what he said? Did he mean to say something that was clear, concise, and actually informed? Or do you think he was obfuscating? I think the latter. I think he was, as a defense attorney would say, well, I'm not going to say anything about this. Because if immigration does pick him up, at least we'd have another bite to eat on post-conviction. Well, maybe when he said appropriate resolution meant that it was his belief that his client should be deported. Well, I don't know if it's personal belief. Well, that's a reasonable interpretation, isn't it? I mean, if we're really talking altruism, and what's right and what's wrong, what's fair and just, that makes sense. Now, if we're talking about the pure interests of his client, it doesn't make any sense. Because saying what he said, when we all know now that he was completely and utterly wrong, suggests the contrary. Well, I don't think he was utterly wrong. I think he took the best choice, and the defendant took the best choice they had. Like I said, the defendant either is going to go to prison for one to three, and then be deported, or get a conviction that probably would be wiped out if he finishes probation. The guy who's getting 1410 is not getting three at the end of a trial. I'm not saying four at the end of a trial. That's what you're saying. He got 1410 here. Right, right. Right. So my guess is, based on his criminal history, he was not going to get three years in the pen. So his choice was really, go to trial, take my bite at the apple, if I get a conviction, or a 1410 probation sentence, I'm still as eligible for deportation as I would be if I pled guilty. Well, I can't read the minds of the trial attorney or the sentencing judge. It's called a trial tax. You can't do that. What's that? You can't do that. It's a trial tax. You can't just give somebody three years because they went to trial. Well, I'm saying three years. It's the same one year. Six months. He still is going to be in prison, and he's much more likely to be picked up by immigration in prison than he would if he's out in the general public. Now the agents actually, you know, they go to the prison. So, you know, it was a very hard decision for him and defense counsel, but I think defense counsel certainly represented him to the best of his ability considering those choices. Counsel, you've heard of lockstep, I'm sure, have you not? Well, yes, depending on the next question, rather. If the state of Illinois Supreme Court has decided that in constitutional issues relating to criminal jurisprudence that we are supposed to follow lockstep with the rulings of federal and the Supreme Court at maximum or minimum, how do you reconcile Lee versus the United States with your position? Well, one, because our facts are completely different than Lee's. In Lee, the defendant consistently asked his attorney if he was going to be deported. It was his biggest concern. The attorney stated that. In Lee, defense counsel actually misadvised him and told him, there will be no consequences. You aren't going to be deported. That's a big distinction. The state conceded that defense counsel was ineffective. We're not going to concede that because we believe that defense counsel was very effective considering the facts in this case. And, you know, as I stated before, deportation was not a determinative factor here. I think it was maybe I go to prison and be deported, or I take a chance on it. And defense counsel knows, and I think maybe that's why they even, and his statement at the sentencing hearing knows that if he does get picked up, at least he does get another chance on post-conviction. This was a first stage dismissal, was it not? Correct. You're making an argument as if there was a third stage hearing and there were findings of fact and all these things were adjudicated thusly. No, I'm not making the argument for what I see on the record and what affidavits were produced. You know, I feel a defendant's affidavit is disingenuous considering what we saw in the sentencing. I don't know that we're supposed to presume that an affidavit is disingenuous. Well, I have to take it at face value or at least give it some credibility. But even at face value, that is provided by that sentencing hearing and the fact that we don't have an affidavit from an immigration attorney that was consulted. Are there any other questions, John? Nope. Thank you very much. Thank you. In response to the State's argument about the missing immigration attorney, our position is there was none. There was no immigration attorney consulted by a trial counsel. If you look at a trial counsel's affidavit, he never mentions that he consulted with an immigration attorney. His professional conduct is in question. He files an affidavit saying, Yes, I never advised that he would be deported as a result of this. I told him there could be adverse consequences. But he never mentions in there that he consulted with an immigration attorney, who that immigration attorney was, so that that could all be determined at some point. Instead, he omits it completely from the affidavit. I submit that that means that, at least at this stage, the question that would raise in my mind is, why wouldn't someone who's dealing with their professional responsibility indicate who exactly they consulted with? That way it could be determined, right? The State could call and talk to that witness and say, What did you tell the trial counsel about the immigration consequences? Instead, it's omitted. And that is part of our position. Your defendant, I think, indicated that he consulted with an immigration attorney in his affidavit. He says that prior to taking the plea, he did not. He said he relied on Mr. Grimes, and it was subsequent to the plea that he did. And subsequent to the plea, but before immigration notified him that they were seeking his whereabouts, did he indicate that the immigration attorney told him that he had made a boo-boo and he should go back into court and seek a vacation of the plea as soon as possible? This defendant in this case was taken into custody by the immigration after his arrest in this case. He was taken into custody. Lake County Sheriff turned him in. He says that they put that in his affidavit. He was taken into custody there. He was released on bond because he wasn't convicted yet of the drug offense. So this is a different case. Justice Jorgensen brought it up about do we have to admonish about if they find you, then maybe you'll be deported. In this case, they found me. They had me. Physically in immigration custody? He was in immigration custody. He was bonded out because he was a permanent resident, and you cannot be held, even on the drug case, until you're convicted. And, of course, in this case, he eventually got convicted. Why did he indicate that he consulted with an immigration attorney? After the plea. And did he indicate what the immigration attorney told him? Yes. You're going to be deported as a result of this plea. And then he hired me. Okay. The state talked about whether the defendant's counsel had any other options than the way he disposed of this case. He did. Drug school. Another option is, and I've done it many times, is you do the 410 probation without the actual plea. You do a stipulation? You do a stipulation. You can do it where there's an affidavit provided to the state. That affidavit is your client's affidavit, admitting to the conduct, and then there's no actual plea made before the judge. No finding of guilty. Right. No finding of guilty. You then conduct and do the 410 probation and assume you do all that. Where's the trial court's authority to do that? The trial court's authority is the same as what I've argued to both courts before who've agreed to do it and the state's attorneys, is 410 probation itself doesn't require the actual plea, if you read the statute. It says it follows from the plea, but it's not required. And so I've made the argument that since it's not required to get 410 probation, you don't actually have to do the plea. Doesn't there have to be a finding of guilty? To do the probation, it's almost, and if any of your honors have done misdemeanor court where somebody will go do their community service, come back and the state will dismiss the case at the end without a plea. It's tantamount to that. More like a diversion. Correct. Drug school is the same effect for immigration because there's no judicial admission of guilt. If there's no judicial admission of guilt, then there is no conviction for federal immigration law. Is it the admission or the finding of guilt? It is the admission. Because, of course, judgments withheld under 410 probation. Did the defendant indicate in his affidavit that he was never told by immigration that if he admitted or pled guilty to this particular crime via 410, that he would be deported in any event? I.e., is there anything in his affidavit that denies actual notice prior to consulting with an immigration lawyer? He says that an officer at the facility of immigration told him that he can't get a drug conviction, otherwise he could be deported. He put that in his affidavit because that's the truth. And they used the word conviction. They used the word conviction. Any other questions? Just one. Could I just post one quick thing on the record? The state had said that there was no prior conversations about the immigration consequences of the plea, but Judge James actually cited that on a prior date, the defense counsel asked for continuance to actually get the immigration situation sorted out. So there was a prior admission, likely, that, hey, this is an immigration-related issue we need to deal with. And I just want to make sure the record was clear on that. Thank you. Thank you. Court is adjourned until 1 o'clock for the last case on the call.